467 P.2d 923

**The STATE of Arizona, Appellee,**

v.

**Wayne E. PHELPS, Appellant.**

**No. I CA–CR 209.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 16, 1970.

Rehearing Denied May 11, 1970.

Review Denied June 9, 1970.

Robert K. Corbin, former Maricopa County Atty., Moise Berger, Maricopa County Atty., by William Carter and Alice A. Wright, Deputy County Attys., Phoenix, for appellee.

Standage, Allen & Phelps, by Gove L. Allen, Mesa, for appellant.

CAMERON, Judge.

Defendant, Wayne E. Phelps, appeals from the finding and judgment by the court of guilty to the charge of (1) operating a food establishment without first having obtained a valid license or permit, and (2) willfully refusing to admit a Maricopa County Health Department inspector into the premises for the purpose of making an inspection. Both charges are allegedly in violation of § 36–184 and § 36–191 A.R.S. and Chapter 8, Section 1, Regulations 3 and 4 of the Maricopa County Health Code.

We are called upon to determine whether the delegation of authority to the Maricopa County Health Department is sufficient and definite enough to allow a viola-tion of the rules and regulations of the said department to be a crime (misdemeanor) under the State statute (§ 36–191 A.R. S.).

The essential facts are as follows. Wayne E. Phelps has operated a grocery store and meat market in the City of Mesa, Arizona, since 1953. He procured both "Retail Food Establishment" and "Meat Department" permits from the Maricopa County Health Department on 9 June 1966. On 1 January 1967, the new Maricopa County Health Code became effective. This code required a valid permit for a period of one year from the date of issuance and also required the payment of a fee for each permit obtained. Defendant failed to renew his previous permit which expired on 9 June 1967.

On 9 November 1967, the County Health Department inspector made an inspection of the defendant's store. The inspector was advised by the defendant that while the inspections were welcomed, he must first obtain the defendant's permission for the inspection.

On 27 November 1967, the inspector came to the store in defendant's absence, unannounced but during business hours, and began an inspection. The defendant returned shortly thereafter and told the inspector to leave.

On 29 November 1967, the inspector filed a criminal complaint against the defendant in the Justice Court, Mesa Precinct, alleging 5 separate counts all violations of A.R.S. § 36–191, § 36–184, and the Maricopa County Health Code. Defendant was found guilty of 3 of the 5 counts. Defendant appealed to the Superior Court and on a trial de novo (to the court) was found guilty of Count I, operating a grocery and meat market without a valid permit and Count III, willfully refusing to admit a representative of the Maricopa County Health Department for the purpose of inspection.

Defendant has appealed to this Court (see A.R.S. § 22–375, subsec. A) claiming that the convictions are void, being based

upon an unconstitutional delegation of the legislative power. The facts necessary to support such convictions are not in dispute.

Article I of Title 36 of the Arizona statutes creates the State Board of Health and gives the State Board the power to provide reasonable and necessary regulations concerning the sale and distribution of food and drink. The statute further provides:

"* * * The regulations *shall* provide for the *inspection* and *licensing* of premises and vehicles so used. * * *." A.R.S. § 36–105, subsec. B, (4), as amended. (emphasis ours)

Section E provides further:

"The provisions of regulations adopted by the board under the authority conferred by this section shall be observed throughout the state and shall be enforced by each local board of health, *but nothing herein shall be deemed to limit the right of any local board of health or county board of supervisors to adopt such ordinances, rules and regulations as authorized by law within its jurisdiction, provided that such ordinances, rules and regulations do not conflict with the state law and are equal to or more restrictive than the provisions of the regulations of the state board of health.*" A.R.S. § 36–105, subsec. E, as amended. (emphasis ours)

Article 4 of Title 36 titled "Local Health Departments" specifically allows the county health departments to make their own rules and regulations:

"The board of health of each county or city-county health departments * * * *shall* make rules and regulations, not inconsistent with the rules and regulations of the state department of health, for the protection and preservation of public health." A.R.S. § 36–184, subsec. B, par. 4. (emphasis ours) See also § 11–251, subsecs. 17 and 30 A.R.S.

The statutes also provide:

"A person violating any provision of this article or the rules and regulations adopted thereunder is guilty of a misde-meanor punishable by a fine of not less than twenty-five nor more than two hundred dollars, by imprisonment for not more than thirty days, or both." A.R.S. § 36–191.

■ It would appear that the legislature intended to confer upon the local boards of health the authority to provide reasonable rules and regulations so long as these rules and regulations were equal to or more restrictive than the rules and regulations of the State Board of Health. It should be noted, however, that the local boards' rules and regulations could only be more restrictive than the regulations of the State Board. Nowhere do we find any indication that the local boards may enact rules and regulations more restrictive than the legislative grant of authority to the State Board of Health. In the instant case, if the State legislature has properly and legally given the State Department of Public Health the power to require an annual license for a fee and the admission of inspectors during business hours, the violation of said rules being a crime under the statute, then the county boards of health also have this power and authority.

■ It is generally agreed that the legislature may provide criminal penalties for the violation of rules and regulations to be enacted by administrative agencies under proper circumstances. State v. Anklam, 43 Ariz. 362, 31 P.2d 888 (1934), and:

"* * * An administrative agency may not be empowered to impose penalties for violations of duties which it creates under a statute permitting it to make rules, even though the legislature fixes the maximum of the penalty. However, the legislature may validly provide a criminal or penal sanction for the violation of the rules and regulations which it may empower administrative agencies to enact." 1 Am.Jur.2d, Administrative Law, § 127 (1962).

Also:

"There can be no doubt that criminal penalties may be provided by the legislature for violation of rules and regula-

tions under proper circumstances. * * *." State v. Allen, 77 N.M. 433, 423 P.2d 867 (1967).

However, it must be remembered that this being a crime, the statute must be strictly construed and not broadened beyond the clear and express intent of the legislature. State v. Wayman, 104 Ariz. 125, 449 P.2d 296 (1969), and:

"* * * Courts administering the criminal law cannot apply sanctions for violation of the mandate of an agency * * * unless that agency's authority is clear and has been conferred in accordance with law." Gojack v. United States, 384 U.S. 702, 86 S.Ct. 1689, 16 L.Ed.2d 870, 878, 879 (1966).

With these principles in mind let us look at the two convictions in this matter.

## FAILURE TO HAVE A VALID PERMIT OR LICENSE

The Maricopa County Health Code, Chapter VIII, Section 1, Regulation 3(a) provides:

"No person shall operate a food establishment without first obtaining and holding a valid permit to do so from the department."

The County Health Code (Chapter I, Regulation 4) also provides:

"h. No permit shall be issued and no permit is valid until the bona fide permit fee is received by the Department. Fees shall be paid according to the following table:

| | | | | | |
|---|---|---|---|---|---|
| * | * | * | * | * | * |
| Meat Market | | | | | $10.00 |
| * | * | * | * | * | * |
| Retail Food Establishment | | | | | $10.00." |

The reasonableness of the amount of these fees is not in question.

■ The State statute gives to the State Board of Health (and therefore the County Health Department) the power to provide for the "licensing of premises". The State Board is not expressly empowered to require an annual license or to require a fee therefor. Subsection C of § 36-187 A.

R.S., added in 1969, specifically allows the county boards of health to "adopt a schedule of reasonable fees to be collected * * * for issuing or renewing licenses or permits." This provision, however, was not in the statute at the time the defendant was charged.

■ It could well be argued that if the county board of health has the power to require a license, that logically they also have the right to charge a reasonable fee in connection therewith. With this we disagree. The legislature must specifically authorize the department to charge a fee, reasonable or otherwise, before a citizen may be convicted of a crime for the failure to pay same. In the instant case, the charging of a fee for an annual license clearly exceeded the legislative grant to the State Board and therefore the County Board had no authority to require such a fee. Our Supreme Court has stated:

"It is fundamental in administrative law that an administrative agency or commission must exercise its rule-making authority within the grant of legislative power as expressed in the enabling statutes. Any excursion by an administrative body beyond the legislative guidelines is treated as an usurpation of constitutional powers vested only in the major branch of government. General Electric Company v. Burton, 372 F.2d 108 (6th Cir.); Busey v. Deshler Hotel Co., 130 F.2d 187, 142 A.L.R. 563 (6th Cir.); 2 Am.Jur.2d, Administrative Law, § 211." Swift & Company v. State Tax Commission, 105 Ariz. 226, 462 P.2d 775, 779 (1969). See also State v. Marana Plantations, 75 Ariz. 111, 252 P.2d 87 (1953).

In the instant case, the County Board of Health had the power to require a license or permit but they went one step further and required a fee for granting the license or permit, and this the legislature did not give them the authority to do.

The conviction upon Count I should therefore be reversed.

## REFUSAL TO ALLOW INSPECTION BY COUNTY HEALTH INSPECTOR

The defendant in this case was charged with refusal to admit an inspector for the purpose of making an inspection. We are not concerned with a search and seizure problem in this case. Theoretically, the defendant has the option to refuse to admit the inspector and suffer the penalty for such refusal, or he can admit the inspector and be guilty of such violations or infractions as the inspector might find. In this regard, the defendant faced the same dilemma as did the defendant in Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

We agree with the numerous cases which state that the line between what is a constitutional and an unconstitutional delegation of authority and power is dim and must in many instances be determined on a case-to-case basis. We also agree that, where as here a criminal statute is being construed, the delegation must be definite and certain:

"* * * It is true, of course, that a law may be valid in its delegation of administrative power but invalid as a criminal statute, because the statute does not clearly enough define the nature and quality of the offense. Champlin Ref. Co. v. [Corporation] Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062. But here the criminal violations are defined by the legislative language taken together with the applicable regulations, and these definitions meet the standards of definiteness required of criminal enactments." United States v. Guterma, 189 F.Supp. 265, 274 (1960).

The statute clearly gives the State Board of Health the power to inspect, § 36–105, subsec. B, par. 4, as amended, in fact it requires it. Inspection of food establishments is a proper and necessary function of the county board of health in protecting the public and in enforcing both the county and State regulations. Inspection is also reasonably to be expected by the public at large as well as people engaged in a business which requires the handling and processing of food and supplies:

"One of the most important tests of whether particular laws amount to an invalid delegation of legislative power is found in the completeness of the statute as it appears when it leaves the hands of the legislature. * * * One court has laid down the rule that in considering whether a section of a statute is complete or incomplete, the test is whether the provision is sufficiently definite and certain to enable one reading it to know his rights and obligations thereunder." 16 Am.Jur.2d, Constitutional Law, § 257 (1964).

And:

"The public has a right to know what acts constitute crimes in this state and the punishments provided therefor. They may properly assume that crimes and punishment are purely a legislative function and that the definition of all crimes and the punishment therefor will be found in the duly enacted statutes of this state. The public may properly rely on the fact that the Legislature meets only at stated intervals and that criminal laws may be enacted, amended, and repealed only during such legislative sessions. * * *." Lincoln Dairy Company v. Finigan, 170 Neb. 777, 104 N.W.2d 227, 232 (1960).

While we do not believe that a person reading the statutes before the 1969 amendment to A.R.S. § 36–187 could envision that he would be committing a crime by not paying to the county board of health a fee for an annual permit, we do believe that a reading of the statutes (§ 36–105, subsec. B, (4), as amended) would indicate that he is subject to reasonable inspection either by the State Board or the county board and that failure to allow such inspection would be a violation of the State statute. The judgment of guilt as to Count III is therefore affirmed.

The appellant has cited the United States Constitution for the basis of the

contention that this is an unconstitutional delegation of legislative authority. We do not believe the United States Constitution or the federal cases are binding upon the State of Arizona. Article 1, Section 1 of the United States Constitution applies to the delegation of federal power and there is no federal constitutional prohibition against a state legislature delegating its power to a state agency. Gold v. Lomenzo, 304 F.Supp. 3 (N.Y.1969).

The judgment is reversed as to Count I, operating a food establishment without a license, and affirmed as to Count III, failure to admit the inspector for inspection.

DONOFRIO, P. J., and STEVENS, J., concur.