[Civil No. 4643. Filed October 15, 1945.]

[162 Pac. (2d) 619.]

MARICOPA COUNTY, a Political Subdivision and Municipal Corporation of the State of Arizona, Appellant, v. SOUTHERN PACIFIC COMPANY, a Corporation, Appellee.

Mr. James A. Walsh, County Attorney, and Mr. Leslie C. Hardy, Special Counsel, for Appellant.

Messrs. Ellinwood & Ross, and Mr. Norman S. Hull, for Appellee.

UDALL, Superior Judge.—There are two related legal questions presented by this appeal:

(1) Was the board of supervisors of Maricopa County authorized to levy a tax in the year 1941 to pay installments of interest and principal of county and school district bonds falling due in the fiscal year 1942–1943 before taxes levied in the year 1942 were available to pay such installments of principal and interest?

(2) Was the board of supervisors authorized to increase the tax levy for the year 1941 by an amount sufficient to compensate for anticipated delinquent and uncollected taxes for that year for the purpose of insuring the payment in full of installments of interest and principal of county and school district bonds falling due in the year 1941 and in the fiscal year 1942–1943?

Southern Pacific Company, as plaintiff, brought two suits (No. 50,901 and No. 51,168) against Maricopa County, as defendant (parties will be herein referred to as they were designated in the trial court), to recover such part of 1941 *ad valorem* taxes levied and assessed against its properties in Maricopa County and twenty-five school districts thereof, as was paid under protest by plaintiff in two installments of $12,189.26 each. The one suit, with twenty-six causes of action, involved the alleged excess payments on the first installments of taxes due for the year 1941, and the other covered the second installment thereof. The allegations of the two complaints were otherwise identical. These cases were consolidated for trial and at the conclusion thereof judgments were entered for plaintiff in the aggregate sum of $24,378.52. Defendant appealed from the judgments and the actions are consolidated for hearing and decision in this court.

Plaintiff alleged that defendant's board of supervisors, without lawful authority, included in the annual budget for the fiscal year 1941–1942, and the tax levies made for that year pursuant to that budget, amounts

to cover principal and interest on county and school district bonds which would not fall due during that year, nor until the succeeding fiscal year 1942–1943, together with amounts to cover anticipated tax delinquencies for the fiscal year 1941–1942. Defendant admitted that its board included such amounts in the budget and tax levies, but denied that legal authority for so doing was lacking, and alleged that the controverted budget and tax levy were justified because the future principal and interest would mature before the tax collection period of fiscal year 1942–1943, and because experience demonstrated that all tax levies were not collected.

The evidence, which was not in dispute, consisted of numerous schedules admitted in evidence, and the testimony of the clerk of the board of supervisors and an accountant in the office.

In the preparation of the budget it appears that there was included amounts in the aggregate of $207,042.43 to cover principal and interest on bonds that would not be due until the ensuing fiscal year; however, the maturity date would precede the tax collection period of that year. Amounts aggregating $133,300 were also included in the budget to cover an estimated 20% (in some instances as low as 10%) anticipated delinquency in tax collection for the then current year. (In passing it is interesting to note that at the time of the trial of these cases the actual delinquency in collection of these taxes was shown to be 10.32%.) The inclusion of these amounts, which is being challenged in these actions, increased the plaintiff's taxes in the exact amount for which judgments were finally entered.

■ Manifestly the county and school districts here involved were, on July 1, 1941, in sound financial condition, as there was a surplus cash on hand of over a half million dollars in their bond interest and term

bond redemption funds. The board, however, properly took these cash balances into account in making up the budget and determining the funds needed, as they viewed it, to meet their requirements for the ensuing year.

The board of supervisors in levying these alleged excess taxes for bond purposes are not charged with bad faith. In an impersonal manner they evidently proposed to keep *ample* funds on hand to meet the principal and interest of the outstanding bonds as they fell due. It does, however, appear from the admissions of their clerk that, in some instances at least, the board was endeavoring, in fixing the amount to be levied for, "to keep the level of the levies at some fairly equal basis," "to maintain a stabilized amount," otherwise expressed as "to equalize the flow of tax collections from year to year." There was no suggestion that any bond was in default on principal or interest. The board was not confronted with any necessity to budget or levy for more than the usual bond requirements of the year. The faith and credit of the county and school districts is not an issue in this case.

▆ If the matters here involved were discretionary with the board of supervisors then the courts should not interfere. Cooley on Taxation, 4th Ed., Vol. 4, Sec. 1612, pp. 3219–3221, states the rule to be:

"Scope of review by courts in general: The power of courts to interfere in matters of taxation, except as permitted by statute, is limited, . . . the amount of taxes where not limited by the constitution, cannot be controlled by the Courts, nor can the courts interfere with the rate of taxation where no constitutional provision is violated."

And from the same work we further quote:

"Excessive levy: A levy may be excessive either because it will result in the collection of a sum more than is needed, or because it is greater in amount or rate than the limit fixed by the constitution or a statute. In

the first case, the courts rarely interefere, since the amount is largely in the discretion of the levying body.'' Vol. 3, Sec. 1032, page 2089.

The reported cases seem to support these propositions. In other words, if there is statutory authority to make the levy usually the courts have no right to review the administrative details of laying levies.

■■ As we construe the pleadings the amount of the levy, strictly speaking, is not an issue; hence the question of whether there was an abuse of discretion by the board of supervisors in fixing the budget and levy need not be determined. Plaintiff does not at-. tack the rate of the levy, but confines its attack to the want of authority to make the levy. Nor are we here concerned with the question as to whether or not it was expedient ''to equalize the flow of the levies.'' Expediency does not, and cannot supply authority. *In re City of Phoenix,* 52 Ariz. 65, 79 Pac. (2d) 347. The fact that the board of supervisors of Maricopa County had followed the practice herein complained of for many years does not add anything to its validity.

■■ Before examining our statutory provisions it is well to restate certain fundamental principles. The board of supervisors possesses only such power as is expressly conferred by statute, or is necessarily implied therefrom. *Board of Sup'rs of Apache County* v. *Udall,* 38 Ariz. 497, 1 Pac. (2d) 343. As applied to municipalities we have stated the general rule to be that the power to levy a tax is never implied, but must directly and specifically be granted. *Wise* v. *First Nat. Bank,* 49 Ariz. 146, 65 Pac. (2d) 1154. The authority to levy a tax must be derived from a statutory grant of power. The legislature is the source of the taxing power, and without a grant from it no taxes can be levied or collected. *Arizona Eastern R. Co.* v. *County of Graham,* 19 Ariz. 320, 170 Pac. 792.

With these principles to guide us let us now examine the legislative grant of power controlling this situation. It is found in Sec. 10–608, Arizona Code Annotated 1939:

"*Tax levy to pay interest and bonds.*—After said bonds are issued the board of supervisors for any county or school district and the governing body for any town or municipal corporation, shall enter upon their minutes, a record of the bonds sold, their numbers and dates, and annually levy and cause to be collected a tax, at the same time and in the same manner as other taxes are levied and collected upon all taxable property in such political subdivisions, sufficient to pay the interest on the same when due; and likewise, annually, levy a tax sufficient to redeem said bonds when the same shall mature. All money derived from the levy of the tax when collected, shall constitute a fund for the payment of such interest and the bonds, to be kept separately and to be known as the 'Interest Fund' and 'Redemption Fund.'"

The defendant takes the position that the wording of this statute, standing alone, is sufficient authority for the levies made. It is argued that the only limitation of the statute on the levy of taxes is that there shall be an annual levy for bond requirements and that the statute does not require that the funds yielded by the tax levy in the year 1941 or 1942 be spent in each of those years. The defendant further contends that on the contrary the statute provides that there shall be an annual levy of taxes for the purpose of creating an interest fund and redemption fund to pay interest on the bonds "when due" and to redeem such bonds "when the same shall mature."

The plaintiff on the other hand contends that the statute in question, Sec. 10–608, *supra,* does not authorize the levy made for bond interest and redemption items falling due in the next fiscal year before tax funds are available to meet them. No reported cases are cited in support of its position. It further relies

upon Sections 73–502 and 73–505, Arizona Code Annotated 1939. These sections are a part of the chapter that controls the preparation of the budget and the levy of taxes. Without quoting these sections at length we are of the opinion that they have no application to the situation we are confronted with. True the budget Section (73–502) restricts the board to an annual ''estimate of the amounts which may be required to meet the public expense for the ensuing year,'' with ''a statement of . . . the amounts necessary to pay the interest and principal of any bonds.'' Section 73–505, *supra* (which provides for tax levies), requires a tax rate which when applied to the assessed valuations for the fiscal year ''will, in the aggregate, produce the entire amount to be raised by taxation for that year.''

■■ We hold that the phrase ''taxation for that year'' as there employed means *the yield of taxes,* and *not a limitation upon the expenditure of taxes.* Furthermore, it is our opinion that tax moneys collected for the payment of bonds and interest thereon need not actually be expended in the fiscal year of collection. Even if the other view were taken would not the placement of these tax moneys in these special bond interest and redemption funds be equivalent to an expenditure during the fiscal year, because they are thereby set aside for a specific purpose, being deposited into special funds created by Sec. 10–608, *supra,* which we have heretofore declared to be ''coexistent in time and purpose with the interest debt.'' *Miners and Merchants Bank* v. *Herron, infra* [46 Ariz. 71, 47 Pac. (2d) 433].

■ The budget statutes, above referred to, and particularly the ten per cent limit check, do not apply to ''bonds and interest thereon,'' as these items are expressly excluded therefrom.

■ As to the first question all of the reported cases that have been called to our attention support the

defendant's position. While the statutes under construction differ slightly from ours on the precise question here involved, the authorities uphold the right of the officials to levy taxes sufficient to meet, at maturity, both the interest and principal as they fall due. See *Ralls County Court* v. *United States,* 105 U. S. 733, 26 L. Ed. 1220; *Morris, Mather & Co.* v. *Port of Astoria,* 141 Or. 251, 15 Pac. (2d) 385; *People* v. *Wabash Railway Co.,* 368 Ill. 497, 14 N. E. (2d) 650; *People* v. *110 South Dearborn St. Corporation,* 363 Ill. 286, 2 N. E. (2d) 68; *Rancho Santa Anita* v. *City of Arcadia,* 20 Cal. (2d) 319, 125 Pac. (2d) 475.

We think the trial Court incorrectly decided the first question.

Turning now to a consideration of the second question, i. e., the right of the county and school districts to levy for an amount sufficient to cover anticipated tax delinquencies. There are reported cases, from jurisdictions having dissimilar statutes, upholding the right of the taxing officials to anticipate tax delinquencies and to levy for an added amount sufficient to compensate for such delinquencies. See *Norris* v. *Montezuma Valley Irrigation District,* 8 Cir., 248 Fed. 369; *Jenkins* v. *Entzminger,* 102 Fla. 167, 135 So. 785; *Vornberg et al.* v. *Dunn et al.,* 143 Ga. 111, 84 S. E. 370; *Morris, Mather & Co.* v. *Port of Astoria, supra.* We, of course, are not bound by these decisions on this point.

As applied to general budget expenditures we have already had occasion to rule, in effect, that: the extent of the duty and the power of the board of supervisors is to levy taxes in such amount only that, *if collected,* will be adequate to meet the requirements for the year of the levy; that it is presumed that taxes so levied will be collected; and that the power and duty to levy for tax delinquencies does not arise *until after* delinquencies occur, and then only by a special levy to meet any deficit existing after appropriate measures

have been taken to collect the delinquent taxes. *Miners & Merchants Bank* v. *Herron et al.*, 46 Ariz. 71, 47 Pac. (2d) 430; *Refsnes* v. *Oglesby,* 50 Ariz. 494, 73 Pac. (2d) 90; *Board of Supervisors* v. *Miners & Merchants Bank,* 59 Ariz. 460, 130 Pac. (2d) 43.

There being no statutory authority, either express or implied, for a levy to cover anticipated tax delinquencies on bond interest and redemption items, we see no occasion here to depart from the salutary rule governing general budget expenditures. The trial court properly entered judgment for plaintiff on that score.

To summarize, as a matter of statutory construction we are of the opinion that as to the propositions stated in the beginning, question number 1 should be answered in the affirmative, and question number 2 in the negative. The judgment of the trial court is therefore affirmed as to the levy for anticipated tax delinquency, but is reversed as to the tax levy to pay installments of interest and principal of county and school district bonds falling due in the succeeding fiscal year before taxes levied for that year were available. The causes are remanded to the lower court for the entering of proper judgments in accordance with the terms of this opinion.

STANFORD, C. J., and MORGAN, J., concurring.

The Honorable ARTHUR T. LaPRADE, now a member of this Court, having presided as the trial judge was disqualified to act; hence, the Honorable LEVI S. UDALL, Judge of the Superior Court of Apache County, was called to sit in his stead.