506 P.2d 279

**MARICOPA COUNTY, a political subdivision of the State of Arizona, et al., Appellants,**

v.

**Earl D. BLACK et al., Appellees.**

**No. 1 CA–CIV 1919.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 22, 1973.

Rehearing Denied March 26, 1973.

Review Denied April 24, 1973.

Kelly & Corbin by Robert K. Corbin, Phoenix, for appellants.

Ward & Contreras by A. D. Ward and Joe W. Contreras, Phoenix, for appellees.

HAIRE, Judge.

The only question presented in this appeal is whether the appellant county may lawfully require as a condition of employment that the appellees (certain employees of the county) participate in a group health and life insurance program established by the county, and whether, against the wishes of appellees, the county may withhold from their wages sums of money for payment of one-half of the premiums for the insurance.

The appellees as plaintiffs sought injunctive relief in the trial court. After the issues were joined, the plaintiffs filed a motion for summary judgment, which was granted. There were no disputed issues of fact, and in granting the motion for summary judgment and issuing its injunction, the trial judge stated:

"This permanent injunction is hereby issued for the reason that there is no statutory authority authorizing Defendants to require Plaintiffs to participate in said program as a term and condition of employment or to deduct or withhold from said Plaintiffs' wages sums of

240

money for payment of premiums for group health and life insurance. It is the opinion of the Court that such statutory authority is necessary."

The facts as presented in the trial court show that in 1969 the state legislature enacted A.R.S. § 11–263 permitting counties to expend public funds for the purpose of procuring health, accident and life insurance for its officers, agents and employees, as follows:

"§ 11–263. Authority to procure health, accident and life insurance for officers, agents and employees; limitation

"Counties may expend public funds, in amounts not exceeding fifty per cent of the total cost, to procure health, accident and life insurance for their officers, agents and employees."

After passage of the legislation the county decided to require that persons employed after October 1, 1969, enroll and participate in a specified group insurance program as a condition of employment. County employees who had been employed prior to October 1, 1969, were given the option to participate in the insurance program, but once having elected to do so, were not permitted to withdraw.

The plaintiffs in this action are both pre-October 1, 1969 employees and post-October 1, 1969 employees, and they have, without success, made written demands on the county that any and all deductions from their wages in connection with the group insurance program be discontinued. Despite their demands, the county continued to require the employees to participate in the insurance program as a term and condition of employment, and further required that the employees pay fifty per cent of the premium payment by deduction from their wages.

On appeal the county contends first, that the enactment of A.R.S. § 11–263 in 1969

ended previous uncertainty existing in the State of Arizona as to whether a county might properly expend public funds for a group health and life insurance program for its employees, and second, that there is no constitutional or statutory provision prohibiting the county from requiring future employees to consent to a deduction from their wages for one-half of the premium cost for such mandatory insurance coverage.

As to the appellant county's first contention, there can be little dispute. The evidence shows that the county had desired to adopt a group health and life insurance program for its employees for some time. However, such a program had not been adopted because of the questionable authority for the Board of Supervisors to expend public funds for such a program. In Hartford Accident and Indemnity Co. v. Wainscott, 41 Ariz. 439, 19 P.2d 328 (1933), the Arizona Supreme Court had held that counties lacked express or implied authority to expend public funds to purchase public liability insurance for the protection of county employees using county-owned motor vehicles. See also, 56 Am.Jur.2d, Municipal Corporation, Counties and Other Political Subdivisions, § 244 (1971). The enactment of A.R.S. § 11–263 in 1969 cured this lack of authority to the extent expressly set forth in its terms—under that enactment public funds could be expended to procure such insurance "in amounts not exceeding fifty per cent of the total cost". However, it does not necessarily follow that by reason of the enactment of § 11–263, the county may require that new employees consent to a deduction from their wages for fifty per cent of the cost of the insurance. Section 11–263 as enacted in 1969, has been previously quoted herein in its entirety.[1] It contains no language which can be interpreted to expressly or impliedly authorize such mandatory deductions.

1. As originally introduced the proposed enactment authorized the counties to pay the full amount of the premium for such insurance. The fifty per cent limita-

tion was later inserted by amendment. (See H.B. 117, 28th Legislature, First Regular Session, 1969).

In our opinion the county's second contention—that there is no constitutional or statutory provision prohibiting the counties from requiring that future employees consent to such deductions—is based upon a faulty premise. In Arizona, counties are not inherently omnipotent. By their very nature and placement in the governmental scheme, the powers of counties are quite limited, generally even more limited than the powers of cities and towns. As stated by Justice Lockwood in Hartford, *supra:*

> "Most of the adjudicated cases distinguish between the powers and liabilities of counties and ordinary municipal corporations such as towns or cities. The reason generally given for the distinction is that towns and cities are voluntary corporations organized at the request and by the approval of the inhabitants thereof for special and local purposes, which purposes are independent of the general governmental activities of the state, and inure to their benefit as distinguished from that of the state, while counties are created by the legislature regardless of the wishes of the inhabitants for the purpose of exercising a certain portion of the general powers of the government in a specified locality." 41 Ariz. at 445, 19 P.2d at 330.

 A county has only such powers as have been expressly or by necessary implication delegated to it by the legislature. Associated Dairy Products Co. v. Page, 68 Ariz. 393, 206 P.2d 1041 (1949); Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 346 P.2d 1101 (1959); Hartford, *supra.* Therefore the absence of any constitutional or statutory prohibition, if such be the case, does not mandate a conclusion that the county may engage in the conduct here questioned. The issue must be approached from the affirmative, that is, what constitutional or statutory authority can the county rely upon to support its questioned conduct? The county points out that A.R.S. § 11–409 authorizes the county boards of supervisors to fix salaries at which employees may be employed by the county, and from this argues that "Such authority must include therein the authority to reduce prospectively salaries to be paid to future employees of the county, and the authority to contractually require such reductions in salary must also include therein the manner in which such reductions may be required." While this argument may be correct in the abstract, its application to the problem at hand is prohibited by the express language of § 11–263 which authorizes the county to pay "not exceeding fifty per cent" of the cost of the insurance. If we consider the requirement for a mandatory deduction from the salary of future employees as a reduction in salary, then the conclusion necessarily follows that the county would be paying *one hundred per cent* of the cost of the insurance, contrary to the express provisions of the authorizing statute.

 Although not expressly articulated, the county appears to advance the argument that A.R.S. § 11–263 impliedly authorizes its conduct here questioned, citing Butterworth v. Boyd, 12 Cal.2d 140, 82 P. 2d 434 (1938). That decision is completely inapposite. There the questioned compulsory deduction for insurance was *expressly* authorized by provisions of the city charter, which became effective after passage of a concurrent resolution by the state legislature. Here, the language of A.R.S. § 11–263 is concise and unambiguous. It simply does not purport to grant the power urged by the county. If such had been the intent of the legislature, it could have very easily inserted language authorizing such deductions. In this regard see A.R.S. § 38–781.01 (Retirement Plan for Public Employees); A.R.S. § 43–188, subsec. f (Withholding Tax for Arizona State Income Tax); and A.R.S. § 38–704 (Social Security for Public Employees).[2]

We find no statutory authority, express or implied, which authorized the mandatory deductions here involved.

---

2. See also Chapter 128, § 2, Laws 1972, amending A.R.S. § 11–263.

In support of the conclusions we reach, the appellees urge that a county, as a political subdivision, cannot in the absence of express statutory authorization or the consent of the employee withhold any sum from the employee's wages; that in order to protect and insure that employees receive *all* wages due them and prohibit unilateral arbitrary practices by elected or appointed county officials, there presently exists and has existed since 1912, legislation mandatorily requiring a political subdivision to pay its employees all wages due, that is:

"The state, and each political subdivision . . . shall, on each of the regular semi-monthly paydays, pay to its employees . . . all wages due the employees up to such date . . . ."

While as a policy matter the appellees' contentions appear to have merit, in view of our above-stated conclusions, we need not determine whether such policy is embodied in the provisions of § 23–351, subsec. B.

The judgment of the trial court is affirmed.

JACOBSON, C. J., Division 1, and EUBANK, P. J., Department B, concur.